Scott, J. It is insisted that, inasmuch as the demurrer, interposed by the State in this case, in its terms, is -to the writ, so much of the record as presents the allegations and interrogatories is excluded from the view of the court. We entertain a different opinion. The demurrer looks through the entire record, and presents it all for examination and judgment. In this proceeding, as in the proceeding by scire facias, the writ of garnishment having the double nature of a writ and of a declaration, (it being the office of the allegations and interrogatories to amplify and complete it in its latter nature,) the demurrer when, as in this case, interposed in terms to the writ, will be intended as interposed to so much of the writ only as is in the nature of a declaration. Any other intendment would be absurd, as it is as incompetent for a demurrer to reach a writ in its purely technical sense as Cor a plea in abatement to perform the office of a demurrer in reaching the insufficiency of the pleadings in the statement of the cause of action. Looking, then, to the whole record, the question is distinctly presented whether or not the salary due from the State to one of her public officers, can, by garnishment, be seized before being paid to him, and appropriated to the payment of his judgment debts. And this seems to be absolutely forbidden by considerations of public policy. In every enlightened community public policy must ever be paramount to individual convenience and pi’ivate interest. And it cannot be doubted that the most efficient administration of the government in general, and the free course of the stream of justice in the tribunals, are the very highest of these considerations. To interpret the will of the legis-1 ature as in conflict, in any degree, with these great public objects, could rarely, if ever, be done; as to do so would be abhorrent to every legal idea of civil liberty. And that the proper and efficient administration of the State government, in all its departments, would be endangered by the establishment of the doctrine contended for by the plaintiffs in error, cannot, for a moment, be doubted, as it would, at all times, in its practical operation, be embarrassing, would frequently be mischievous, and, under some circumstances, might prove fatal to the public service. If the statute of garnishments, and that providing for the conduct of suits against the State, were to be construed in a condition of isolation, without any regard to the body of the law, and rvith reference alone to their apparent provisions, there would be much plausibility in the position of the plaintiffs in error; but as they are but an inconsiderate part of an harmonious body of laws, all looking to one great paramount object, this mode of interpretation cannot for a moment be tolerated. Nor are we without the most persuasive authority for the ground we occupy.. The unbroken current of decisions in England, and in the State and federal courts of the United States, as to the doctrines of the law analogous, and,for the most part, identical in principle, and even so to the very letter in many instances, have uniformly excluded money, and other effects, in the hands of executors and administrators, and in the hands of all officers of the law, from the operation of such enactments, although in their general terms these would seem to have been included. (Conant vs. Bicknell, 1 Chip. 50. Duboise vs. Duboise, 6 Cowen, 494. Chealy vs. Brewer, 7 Mass. 259. Barnes vs. Treat, ib. 271. Brooks vs. Cook, 8 Mass. 246. Pickquett vs. Sloan, 4 Mason, 443. 1 Root, 451. 4 Day, 87, 96. 1 Conn. 385. 4 Greenl. 533.) And to the same purport has this court gone in several adjudications, as cases have arisen. 5 Ark. 55. Ib. 188. Ib. 135. Ib. 700. 1 Eng. 212. 2 Eng. 103. In the supreme court of the United States, at the January term, 1846, in a case where a purser of the navy had been garnisheed, and seamen’s wages, for debts due by them, had been attempted to be attached in his hands for their satisfaction, Mr. Justice McLean, in delivering the opinion of that court, says: “ The important question is, whether the money in the hands of the purser, though due to the seamen for wages, was attachable. A purser, it would seem, cannot, in this respect, be distinguished from any other disbursing agent of the government. If the creditors of these seamen may, by process of attachment, divert the public money from its legitimate and appropriate object, the same thing may be done as regards the pay of our officers and men of the army, and of the navy, and also in every other caso where the public funds may be placed in the hands of an agent for disbursement. To state such a principle is to refute it; no government can sanction it. At all times it would be found embarrassing, and, under some circumstances, it might be fatal to the public service. The funds of the government are specifically appropriated to certain national objects, and if such appropriation may be diverted and defeated by State process, or otherwise, the functions of the government may be suspended. So long as money remains in the hands of a disbursing officer, it is as much the money of the United States as if it had not been drawn from the treasury. Until paid over by the agent of the government to the person entitled to it, the fund cannot, in any legal sense, be considered a part of his effects. The purser is not the debtor of the seamen. It is not doubted that cases may have arisen in which the government, as a matter of policy or accommodation, may have aided a creditor of one who received money for public services; but this cannot have been under any supposed legal liability, asno such liability attaches to the government or to its disbursing officers.” And accordingly the cause was remanded to the State of Virginia, where it originated, with instructions for its dismissal. This case, although different in its facts from that at bar, and the remarks of Judge McLean, which we have quoted, so firmly present the general considerations which prevent the establishment of the doctrine contended for by the plaintiffs in error, that we deem it unnecessary to examine and array the other considerations of minor import appropriately suggested by the Attorney General, some of which have been in principle sustained by the decisions of the State courts. 1 Ala. Rep. 398. Ib. 754. Therefore, finding no error in the proceedings of the court below, its judgment must be affirmed with costs.